## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **MICHAEL PAOLONE** ) | |
| ) | |
| **Plaintiff,** ) | **Civil Action No.: 05-2300 (JDB)** |
| ) | |
| **v.** ) | |
| ) | |
| **ROBERT MUELLER,** *et al.*, ) | |
| ) | |
| **Defendants.** ) | |
| ) | |

## <u>DEFENDANTS' MOTION TO DISMISS, OR IN THE ALTERNATIVE, TO TRANSFER</u>

Federal defendants, Robert Mueller and Special Agent Timothy Healy, named in their official and personal capacities, by and through undersigned counsel, hereby respectfully move, pursuant to Fed. R. Civ. P. 12 (b)(1), (4), and (6), for dismissal of this action for lack of subject matter jurisdiction, insufficiency of process, and failure to state a claim upon which relief may be granted.[1]

In support of this motion, the Court is respectfully referred to the accompanying Memorandum of Points and Authorities.  A proposed Order consistent with the relief sought herein is attached.

---

[1] Defendants Mueller and Healy appear in their official capacities only.  They have not been served personally so do not appear to be party in their personal capacity, at this time and defendants should be deemed to preserve all defenses available to them, including insufficiency of service of process and immunity from suit.  A third unknown defendant has never been named.

Respectfully submitted,


\_\_\_\_/s/_____
KENNETH L. WAINSTEIN, D.C. BAR # 451058
United States Attorney


\_\_\_\_\_/s/_____
RUDOLPH CONTRERAS, D.C. BAR # 434122
Assistant United States Attorney


\_\_\_\_/s/_____
JOHN F. HENAULT, D.C. Bar # 472590
Assistant United States Attorney
Judiciary Center Building
555 4th Street, N.W. – Civil Division
Washington, D.C.  20530
(202) 307-1249
(202) 514-8780 (facsimile)

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| MICHAEL PAOLONE | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) |
| ROBERT MUELLER, *et al.*, | ) |
| | ) |
| Defendants. | ) |
| | ) |

Civil Action No.: 05-2300 (JDB)

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANTS'**
**MOTION TO DISMISS, OR IN THE ALTERNATIVE, TO TRANSFER**

Defendants hereby submit this memorandum of law in support of its motion, pursuant to Fed. R. Civ. P. 12(b)(1), (b)(4), and 12(b)(6).

**I.    Introduction**

Plaintiff, *pro se* in this action, is Utah state inmate Michael Paolone, Register Number # 25408-89213, presently incarcerated at the Central Utah Correctional Facility in Draper, Utah serving a 1-15 year sentence.  See Complaint p. 1; See also State v. Paolone, Case No. 961700208.

**Factual Background**

Plaintiff filed this current action on November 29, 2005 pursuant to Bivens.[2]  See Compl. at 5.  This case stems from plaintiff's 1996 conviction in Utah on state charges of forcible sexual assault, a second degree felony.  See State v. Paolone, Case No. 961700208.  Defendant Timothy Healy, then an FBI agent assigned to the Salt Lake City Division, was the foreman of the jury that convicted plaintiff.  See Compl. at 3.  Healy had gone to the courthouse that day to seek to have his

---

[2]  Bivens v. Six Unknown Agents of Federal Bureau of Narcotics, 403 U.S. 388 (1971).

wife, a home health nurse, excused from jury duty due to patient care responsibilities. Id. The judge

presiding over plaintiff's trial excused Healy's wife, but ordered Healy placed in the jury pool in her

place. Id at 4. Plaintiff contends that the "fact" of alleged manipulation of his jury "by the Agent

and Judge" was known to FBI Office of Professional Responsibility ("OPR"), but never disclosed

to plaintiff. Id. at ¶¶ 15, 18. The alleged "manipulation" refers to the fact that Healy's wife had been

summoned for jury duty, rather than Healy. Id. Healy's identity as an FBI agent, however, was

acknowledged in open court, yet plaintiff's attorney, Don Redd, made a tactical decision not to

exercise a peremptory challenge to strike Healy, with the result that Healy was selected as a member

of the jury, and later elected Foreman. See Ex. B at 4 (Application for Habeas Corpus,

2:05CV01050 (TC)). In fact, plaintiff's attorney did not ask any voir dire questions of defendant

Healy with regard to his "active employment as an FBI investigator whose office had active warrants

at the time of trial." Id. Plaintiff, as stated below, has subsequently filed numerous petitions citing

ineffective assistance of counsel with regard to Mr. Redd. Id.

On December 22, 2004, plaintiff wrote a letter to FBI Special Agent in Charge, Robert J.

Garrity, Jr., requesting him to serve as a "credible source of information contained in the FBI's

official records." See Ex. D. On December 29, 2004, Special Agent in Charge, Robert J. Garrity,

Jr. informed plaintiff that the inclusion of a professional law enforcement officer on his jury had

been investigated and that no ramifications on his conviction was found. Id. In his letter, Mr.

Garrity noted that plaintiff now appeared to have changed his original story which had alleged that

SSA Healy should not have served on his jury because the agent knew the plaintiff and was biased

against him. Id. Furthermore, the letter informed plaintiff that the FBI had investigated plaintiff's

claims and determined that (1) Agent Healy did not know the plaintiff before he served on the jury;

(2) the Agent had not investigated the plaintiff, either as an FBI Agent or police officer in Ohio; (3) that Agent Healy had, in fact, never even been a police officer in Ohio; (4) that the Agent was seated in the jury pool at the beginning of jury selection; (5) that plaintiff's lawyer did not exercise a peremptory challenge to exclude Agent Healy; (6) that the lawyer admitted to the FBI that he deliberately included Agent Healy on the jury; (7) and that plaintiff's lawyer referred to the Agent in open court and stated that he had purposefully selected him because he wanted a member of the jury who was knowledgeable about criminal law.  Id.

In his current complaint, plaintiff alleges that he was interviewed by the FBI in July of 2003 regarding defendant Healy's participation in his criminal trial, and that he then attempted to obtain a copy of whatever report resulted.  See Compl., ¶ 10-11.

The complaint then notes that plaintiff has been unable to obtain a copy of the OPR investigative file for use in attacking his conviction, id. at ¶ 19, and that defendant Healy has refused to authorize the release of the file to plaintiff.  Id. at ¶ 20.  Plaintiff also asserts he has been contacted by the Utah Board of Pardons, id. at ¶¶ 22-24.

Plaintiff's legal claims are that defendant Healy's participation on his jury constituted a violation of his rights under the Fifth, Sixth and Fourteenth Amendments.[3]  Plaintiff further alleges that the Director and other unknown agents employed by FBI OPR were aware that Healy violated plaintiff's "clearly established and clearly defined" constitutional rights, yet took no action to reveal Healy's alleged improper conduct.  See Compl. at ¶ 26.  Plaintiff also alleges a civil conspiracy to

---

[3]  Plaintiff's claims -- to the extent they arise under the Fourteenth Amendment -- are clearly barred, as the Fourteenth Amendment applies only to states and not to the federal government.  Bolling v. Sharpe, 397 U.S. 497, 499 (1954)

3

deprive him of his rights, in violation of 18 U.S.C. § 241.[4]

Following his conviction, plaintiff has repeatedly, and unsuccessfully, attempted to have his conviction overturned in both state and federal court. See Ex. A at 2-4. These attempts include: (1) Case No. 970700092 in the Second Judicial District Court of Davis County on February 27, 1997; (2) Case No. 000-CV-787, in the United States District Court in the Central District of Utah on November 2, 2000; (3) Case No. 010700442 in the Second Judicial District Court of Davis County, on August 10, 2001; (4) Case No. 020700352 in the Second Judicial District Court of Davis County, July 19, 2002; (5) Case No. 050700051 in the Second Judicial District Court of Davis County on January 28, 2005; and (6) Case No. 05-CV-01050 (TC), in the United States District Court in the Central District of Utah on December 20, 2005 (habeas corpus application still pending in the Federal District of Utah). See Ex. B (Docket Sheet and Order transferring case to Magistrate).

At least five petitions for post-conviction relief have been denied by both state and federal courts. See Ex. C (Paolone v. State, No. 20050913-CA, 2006 WL 61935 (Utah App., Jan. 12, 2006) (unpublished decision) (affirming denial of plaintiff's fourth petition for relief); and Paolone v. State, No. 981441-CA, 1999 WL 33244772 (Utah App., Nov. 16, 1999) (unpublished op.) (affirming denial of plaintiff's first petition for relief)). Of particular note, plaintiff's first petition specifically alleged ineffective assistance of counsel, see 1999 WL 33244772 at p. 1. Moreover, the recent appellate court decision makes it clear that plaintiff's petitions "have repeatedly raised similar issues regarding ineffectiveness of counsel and the seating of a particular juror." See 2006 WL 61935 at

---

[4] Plaintiff cannot assert claims against the United States or any individual under 18 U.S.C. § 241, which is a penal statute. Responsibility for asserting such claims is the exclusive province of prosecutors. See Cok v. Cosentino, 876 F.2d 1, 2 (1st Cir. 1989) ("Only the United States as prosecutor can bring a complaint under 18 U.S.C. § 241-242") (private citizen has no authority to initiate federal criminal prosecution).

p. 1.  Finally, the 2006 decision specifically held that, "to the extent plaintiff argues he has new evidence regarding the seating of the juror, such evidence was merely cumulative and was immaterial, based on the previous decisions of the district court concluding that the juror was properly seated."  Id. (emphasis added).

In this current complaint, plaintiff has failed to personally serve FBI Director Mueller or SSA Healy with a copy of the summons and complaint.  The closest that plaintiff came to service at all on Agent Healy was serving a copy of the complaint on an FBI employee at Healy's then-duty station at the Terrorist Screening Center in northern Virginia (Healy was recently promoted to Assistant Special Agent in Charge of the FBI's Washington Field Office).

Plaintiff seeks (1) declaratory relief that his rights have been violated; (2) an order instructing defendant Director Mueller to contact the Utah State Attorney General regarding Agent Healy's and advise them that FBI officials have violated plaintiff's rights; (3) an order instructing defendant Director Mueller to contact the Utah Board of Pardons and request that plaintiff be released on parole; and (4) punitive damages in the amount of $250,000 against defendants Mueller and Healy and $750,000 against an unknown defendant for alleged violations of his Fifth, Sixth, and Fourteenth Amendment rights.  Id. at 7-8.

## II.    Standard of Review

### A.    Requests for Dismissal

Defendants move for dismissal of plaintiff's complaint under Rule 12(b)(1), lack of subject matter jurisdiction, 12(b)(4), insufficiency of process, and 12(b)(6), failure to state a claim.

The purpose of a motion to dismiss under Rule 12(b)(6) is to test the legal sufficiency of a complaint.  Atchinson v. District of Columbia, 73 F. 3d 418, 421 (D.C. Cir. 1996).  A complaint may

be dismissed for failure to state a claim upon which relief may be granted, if the facts pled and reasonable inferences therefrom are legally insufficient to support the relief requested.  Appleton v. United States, 69 F. Supp. 2d. 83, 86 (D.D.C. 1999).  In reviewing a motion to dismiss, whether on grounds of lack of jurisdiction over the subject matter or for failure to state a cause of action, all factual allegations in the complaint and all reasonable inferences that can be drawn therefrom must be accepted as true and viewed in the light most favorable to the nonmoving party.  Conley v. Gibson, 355 U.S. 41, 45-46 (1957); Scheuer v. Rhodes, 416 U.S. 232 (1974).  The court need not, however, accept as true the plaintiffs legal conclusions.  See Taylor v. FDIC, 132 F.3d 753, 762 (D.C. Cir. 1997).  From the facts alleged in the complaint in this case, plaintiff can prove no set of facts that would entitle him to relief.

**III.  Argument**

      **A.       Plaintiff Has Not Perfected Service Against the Individual
              Federal Defendants**

      Neither of the individual defendants in this action were properly served with the complaint in accordance with the rules applicable to individual defendants.  Simpkins v. District of Columbia Government, 108 F.3d 366, 369 (D.C. Cir. 1997).  It is well established that, in an action against a federal employee in his or her individual capacity, the individually-sued defendant must be served with process in accordance with Rule 4(e) of the Federal Rules of Civil Procedure.  Id.  Rule 4(e) provides that service is effectuated by complying with the laws of the state for such in which the district court is located by delivering a copy of the summons and complaint to the defendant (or his appointed agent) personally, or by leaving copies thereof at the defendant dwelling house or usual place of abode with some person of suitable age and discretion

who resides there. Fed. R. Civ. P. 4(e). The SCR-Civil 4(e)(2) allows for service upon individuals by first class, certified or registered mail. Actual notice will not, of course, substitute for technically proper service under Rule 4 and will not permit the Court to render a personal judgment against an individually-sued defendant. Sieg v. Karnes, 693 F.2d 803 (8th Cir. 1982); See also Stafford v. Briggs, 444 U.S. 527 (1980).

In this case, plaintiff served the individual defendants at their place of employment. Service was made upon the FBI for Director Mueller in his official capacity. Service at the defendants place of employment is not, however, proper service for a Bivens action. As stated earlier, defendant SSA Healy was also not personally served with the complaint, but a copy of the complaint was served on an FBI employee at Healy's then-duty station at the Terrorist Screening Center in northern Virginia (Healy was recently promoted to Assistant Special Agent in Charge of the FBI's Washington Field Office). Because the record in this action is devoid of any evidence of proper personal service upon either of the federal defendants in their individual capacities, this action cannot proceed against them individually and all claims against the defendants in their individual capacity should be dismissed.

The District Court will lack jurisdiction over the federal officials, until all of the provisions of Rule 4(i)(1) and (2) are met. Ecclesiastical Order of the Ism of Am, Inc. v. Chasin, 845 F.2d 113, 116 (6th Cir. 1988); Sanchez-Mariani v. Ellingwood, 691 F.2d 592, 594 (1st Cir. 1982). It is the plaintiff in a civil action who has the burden of establishing the validity of service of process. Grand Entertainment Group, Ltd. v. Star Media Sales, Inc., 988 F.2d 476, 488 (3d Cir. 1993); Lensel Lopez v. Cordero, 659 F. Supp. 889, 890 (P.R. 1987). Therefore, if that cannot be demonstrated, this case should be dismissed based upon insufficiency of service of

process under Rule 12(b)(5).  Accordingly, claims against the individual defendants should be dismissed.

### B.   *Respondeat Superior* Liability Is Not Available in <u>Bivens</u>

Defendant FBI Director Robert Mueller is not personally liable for constitutional torts of employees he supervises under the doctrine of *respondeat superior*.  <u>Monell v. Department of Social Services</u>, 436 U.S. 658 (1978); <u>Cameron v. Thornburgh</u>, 983 F.2d 253, 258 (D.C. Cir. 1993); <u>Meyer v. Reno</u>, 911 F. Supp. 11, 15 (D.D.C. 1996).  In <u>Cameron</u>, the D.C. Circuit dismissed the Attorney General and Director from the suit because the complaint failed to allege their personal involvement and was based solely "on the bare assumption" that policy decisions in the District of Columbia influenced the prisoner's treatment in a federal prison in Indiana.  <u>Id.</u> at 258.

In the <u>Meyer</u> case, 911 F. Supp. at 15, this Court discussed *respondeat superior* within the context of federal inmate lawsuits:

> Absent any allegations that defendants Reno and Hawk personally participated in the events which gave rise to the plaintiff's claims, or any corroborative allegations to support the inference that these defendants had notice of or acquiesced in the improper securing of detainers against the plaintiff by their subordinates, dismissal is appropriate.  <u>See Haynesworth v. Miller</u>, 820 F.2d 1245, 1259 (D.C. Cir. 1987) (fellow government employees cannot be held liable under the theory of *respondeat superior* for either constitutional or common law torts); <u>Smith-Bey v. District of Columbia</u>, 546 F. Supp. 813, 814 (D.D.C. 1982) (same).  *Respondeat superior* has been consistently rejected as a basis for the imposition of § 1983 or <u>Bivens</u> liability.  <u>See, e.g., Monell v. Dep't of Social Srvcs.</u>, 436 U.S. 658, 691 (1978); <u>Rizzo v. Goode</u>, 423 U.S. 362 (1976); <u>Boykin v. District of Columbia</u>, 689 F.2d 1092, 1097-99 (D.C. Cir. 1982); and <u>Tarpley v. Greene</u>, 684 F.2d 1, 9-11 (D.C. Cir. 1982).  Therefore, any potential § 1983 or <u>Bivens</u> claims against these defendants, whose only relationship to the instant litigation is their ultimate supervisory status, must be dismissed.

"Without a showing of direct responsibility for the improper action, liability will not lie against a

8

supervisory official.  A causal connection, or an affirmative link, between the misconduct complained of and the official sued is necessary." <u>Wolf-Lillie v. Sonquist</u>, 699 F.2d 864, 869 (7th Cir. 1983).  Individual liability for damages for violation of constitutional rights is predicated upon personal responsibility.  <u>Schultz v. Baumgart</u>, 738 F.2d 231, 238 (7th Cir. 1984).

Plaintiff makes no allegations to support a claim against defendant FBI Director Mueller in his individual capacity.  Plaintiff only vaguely claims that defendant FBI Director Mueller was aware of defendant Healy's jury service and that defendant FBI Director Mueller is responsible for the training and supervision of agents.  There is no allegation that defendant FBI Director Mueller participated in any decision or approved of any policy that related to the case.  Rather, just as in the <u>Cameron</u> case, the plaintiff seems to be basing his claim against the defendant in his individual capacity on an assumption that based on his position, he bears responsibility for the acts of his subordinates.  This is an insufficient basis upon which to maintain a <u>Bivens</u> claim. <u>See</u> <u>Bivens v. Six Unknown Agents of Federal Bureau of Narcotics</u>, 403 U.S. 388 (1971).

Therefore, defendant FBI Director Mueller should be dismissed for failure to state a claim upon which relief can be granted under Rule 12(b)(6), Federal Rules of Civil Procedure, and under the Prison Litigation Reform Act.

### C.    Defendant Officials May Not Be Sued for Damages In Their Official Capacities

To the extent that plaintiff seeks damages against individual defendants in their official capacities, his claims must be dismissed absent a waiver of sovereign immunity.  <u>Meyer v. Reno</u>, 911 F. Supp.11 (D.D.C. 1996); <u>Marshall v. Reno</u>,  915 F. Supp. 426 (D.D.C. 1996); <u>Deutsch v. U.S. Dept. of Justice</u>, 881 F. Supp. 49, 55 (D.D.C. 1995).  The inherent sovereign immunity of

9

the United States protects it and its agencies [such as the BOP] from suit absent express waiver.

See United States v. Nordic Village, 503 U.S. 30 (1992).  Sovereign immunity also bars suits for money damages against officials in their official capacities for nondiscretionary acts absent a specific waiver by the government.  Clark v. Library of Congress, 750 F.2d 89, 101-02 (D.C. Cir. 1984).  Plaintiff's complaint does not contain any colorable basis for such a waiver.  Therefore, to the extent plaintiff asserts claims for damages against the defendants in their official capacities such claims must be dismissed for lack of subject matter jurisdiction.

### D.    Individual Defendants Are Entitled to Qualified Immunity

The Bivens claims against the individual defendants should also be dismissed because they are entitled to qualified immunity.  Plaintiff is seeking monetary damages against FBI Director Mueller and SSA Healy.  Qualified immunity, however, shields government officials from suit in performance of a discretionary function unless that official's conduct violated a clearly established constitutional or statutory right of which a reasonable person would have known.  Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982).  Qualified immunity is "an entitlement not to stand trial or face the other burdens of litigation."  Mitchell v. Forsyth, 472 U.S. 511, 526 (1985).  The privilege is "an immunity from suit rather than a mere defense to liability; and like an absolute immunity, it is effectively lost if a case is erroneously permitted to go to trial."  Id. The D.C. Circuit, in Farmer v. Moritsugu, 163 F.3d 610, 613 (D.C. Cir. 1998), explained:

> In short, "[a]n official is ... entitled to summary judgment [on qualified immunity grounds] unless '[t]he contours of the right [were] sufficiently clear that a reasonable official would [have] underst[ood] that what he [was] doing violate [d] that right.' " Harris v. District of Columbia, 932 F.2d 10, 13 (D.C. Cir. 1991) (quoting Anderson v. Creighton, 483 U.S. 635, 640 (1987), aff'd, Creighton v. Anderson, 922 F.2d 443 (8th Cir. 1990)).

10

By "provid[ing] government officials with the ability reasonably to anticipate when their conduct may give rise to liability for damages," Anderson, 483 U.S. at 646, the doctrine of qualified immunity strikes a balance between compensating those injured by official conduct and protecting the Government's basic ability to function. See Harlow, 457 U.S. at 813-14. In other words, qualified immunity is designed to mitigate the social costs of exposing government officials to personal liability--costs such as "distraction of officials from their governmental duties, inhibition of discretionary action, and deterrence of able people from public service." Id. at 816; see also Harris, 932 F.2d at 13. To this end, qualified immunity provides not simply a defense to liability, but also "an entitlement not to stand trial or face the other burdens of litigation, conditioned on the resolution of the essentially legal question whether the conduct of which the plaintiff complains violated clearly established law." Mitchell v. Forsyth, 472 U.S. 511, 526 (1985).

In determining whether an official is entitled to qualified immunity from personal liability for money damages, there is a two-step process that must be followed by a federal court. Saucier v. Katz, 121 S. Ct. 2151 (2001). A court must always begin with this first step: "[t]aken in the light most favorable to the party asserting the injury, do the facts alleged show the officer's conduct violated a constitutional right?" Id. at 2156. "If no constitutional right would have been violated were the allegations established, there is no necessity for further inquiries concerning qualified immunity. On the other hand, if a violation could be made out on a favorable view of the parties' submissions, the next, sequential step is to ask whether the right was clearly established." Id. Therefore, if the first portion of the two-pronged test is not met, as here, there is no constitutional violation, then the defendants are entitled to qualified immunity. See Farmer v. Moritsugu, 163 F.3d 610, 613 (D.C. Cir. 1998) (no Eighth Amendment showing of deliberate indifference by BOP Medical Director; therefore, he was entitled to qualified immunity); Verdecia v. Adams, 327 F.3d 1171, 1177 (10th Cir. 2003) ("Because Verdecia cannot meet the first portion of the two-pronged test, the defendants are entitled to qualified immunity.").

11

E.       **Plaintiff's Claims are Barred Pursuant to** <u>Heck v. Humphrey</u>

It is clear from the complaint that plaintiff's claims in this case arise from his 1996 conviction in Utah state court for forcible sexual abuse.  <u>See</u> Ex. A. at 1.  SSA Healy was the foreperson of the jury that convicted plaintiff.  <u>Id.</u>  Plaintiff's lawsuit, which seeks damages from defendant Healy as well as from FBI Director Mueller and other unnamed FBI personnel with respect to his conviction and imprisonment, <u>see</u> Compl. at ¶ 31(E), is therefore, nothing more than a collateral attack on his state court judgment of conviction, a judgment that has already withstood several state court petitions for post-conviction relief and remains intact.  Even plaintiff's efforts to obtain declaratory relief, in the form of orders finding that his rights during his criminal trial have been violated , <u>id.</u> at ¶ 31 (A) & (B), and requiring the FBI Director to contact Utah state authorities with respect to plaintiff's claims about errors in his criminal trial (including asking that plaintiff be released on bail) also comprise collateral attacks on the legitimacy of plaintiff's state court conviction.

In 1971 the Supreme Court recognized a cause of action in tort for persons subject to intentional violations of constitutionally protected rights by government officials.  <u>Bivens v. Six Unnamed Agents of the Federal Bureau of Narcotics</u>, 403 U.S. 88 (1971).  Among the litigation that immediately ensued were numerous frivolous cases filed by prisoners asserting <u>Bivens</u> claims against anyone connected with their arrest and conviction, as well as persons associated with their incarceration.

In 1994, the Supreme Court narrowed the scope of actionable <u>Bivens</u> claims.  In <u>Heck v. Humphrey</u>, 512 U.S. 477 (1994), the Court held that an individual convicted of a crime may not recover damages pursuant to 42 U.S.C. § 1983 for "harm caused by actions whose unlawfulness

12

would render the] conviction or sentence invalid." Id. at 486. Such claims are barred unless the plaintiff can "prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus, 28 U.S.C. § 2254. Id. at 486-87. The Court further observed that, in order to properly apply the Heck v. Humphrey doctrine, [T]he district court may consider whether a judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction or sentence; if it would, the complaint must be dismissed unless the plaintiff can demonstrate that the conviction or sentence has already been invalidated." Id. at 487 (emphasis added).

While Heck itself addresses only § 1983 actions, the Court of Appeals for the District of Columbia Circuit has extended its holding to the federal analog of § 1983 actions, Bivens claims. Williams v. Hill, 74 F.3d 1139-1340-41 (D.C. Cir. 1996). Nor is this circuit's application of the Heck doctrine limited merely to actions seeking damages pursuant to Bivens. While the plaintiff in Williams, for example, alleged a conspiracy to violate his rights under the Fourth, Fifth and Sixth Amendments, as well as the Racketeer Influenced Corrupt Organizations Act ("RICO"), as well as mail and wire fraud statutes, the Court of Appeals noted that "Heck does not rest on statutory language, legislative history, comity, or any other consideration unique to actions under 42 U.S.C. § 1983. It rests instead on the need for finality of criminal convictions and on the analogy between actions under § 1983 and the common law of malicious prosecution, which barred the suit unless the criminal prosecution ended in the plaintiff's favor." Id.

Here, like the plaintiff in Williams, plaintiff's complaint is that he remains in prison as the result of an allegedly improper conviction. His claims against the Director and unnamed agents

13

of the FBI's OPR are complaints that they have conspired to fail to notify the state of Utah of this allegedly improper conviction. All of plaintiff's claims, therefore, necessarily imply the invalidity of his 1996 state court conviction, a conviction that has withstood several rounds of appellate review by the Utah courts. Under these circumstances, permitting plaintiff to proceed with this civil action "would merely vest him with yet one more collateral opportunity to impugn the legitimacy of his conviction." Hazel v. Reno, 20 F. Supp. 2d 21, 24 (D.D.C. 1998). Dismissing this case would instead uphold the important "need for finality of criminal convictions." Id.

Since plaintiff's claims are barred by Heck, it is fully appropriate -- if not mandatory -- for the court to dismiss the complaint pursuant to 28 U.S.C. § 1915(e)(2)(B)(i) because the action has "been shown to be legally frivolous." Williams v. Hill, 878 F. Supp 269, 271 (D.D.C. 1995), aff'd 74 F.3d 1339 (D.C. Cir. 1996).

**F.    Plaintiff's Claims are Also Barred by the Utah Four Year Statute of Limitations**

Since Bivens claims (asserting tort claims against federal employees based on alleged denial of constitutional rights) are a judicially created remedy, they are not subject to an express statute of limitations. Van Tu v. Koster, 364 F.3d 1196, 1198 (10th Cir. 2004); Reinbold v. Evers, 187 F.3d 348, 359 n.10 (4th Cir. 1999); Lederman v. United States, 131 F. Supp. 2d 46, 60 (D.D.C. 2001). Instead, Bivens actions generally borrow the general personal injury statute of limitations of the state in which the claim arose. Van Tu, 364 F.3d at 1198; compare Lederman, 131 F. Supp. 2d at 62 (holding that Bivens claims are subject to the District of Columbia's three-year general statute of limitations).

14

Under Utah law, claims asserting personal injuries are subject to a residual four-year statute of limitations.  Utah Stat. Ann. § 78-12-25(3); Van Tu, 364 F.3d at 1199; Hom v. Utah Dept. of Public Safety, 962 P.2d 95, 101 (Utah Ct. Appeals 1998).  This four year residual limitations period therefore governs Bivens claims arising in Utah.  Id.

While state law provides the appropriate statute of limitations, federal law determines when a Bivens claim accrues.  Reinbold, 187 F.3d at 359 n.10; Indus. Constructors Corp. v. United States Bureau of Reclamation, 15 F.3d 963, 969 (10th Cir. 1994).  Under federal law, the statute of limitations on a Bivens claims "begins to run when the plaintiff knows or has reason to know of the existence and cause of the injury which is the basis of his action."  Van Tu, 364 F.3d at 1199, quoting Industrial Contractors, 15 F.3d at 969 (emphasis added); accord Reinbold, 187 F.3d at 359 n.10.

As discussed supra, plaintiff's claims center on his 1996 criminal conviction in Utah state court and defendant Healy's service on the jury that convicted him.  Even his complaints about the alleged 2003 FBI internal investigation into jury service can be traced back to 1996, since they essentially constitute collateral attacks on that conviction.  See Paolone v. State, No. 20050913-CA, 2006 WL 61935 (Utah App., Jan. 12, 2006) (unpublished decision) (affirming denial of plaintiff's fourth petition for post-conviction relief).  Plaintiff's claims therefore accrued in 1996, and are now barred by the four year Utah statute of limitations.  Accordingly, plaintiff's claims are now time barred and should be dismissed.

### G.    Plaintiff's Efforts to Require FBI Director Mueller to Contact Utah Authorities Regarding Plaintiff's 1996 Conviction Are Also Barred

Plaintiff also seeks to compel FBI Director Mueller to contact the Utah Attorney

15

General's office and advise them that "FBI officials have participated in the violation of plaintiffs (sic) constitutional rights during a state criminal trial," Compl. at ¶ 31(C), and to also "make a formal request of the Utah Board of Pardons to release plaintiff on parole," id. at ¶ 31(D), pending presumably another petition for post-conviction relief.  This is merely another gloss on plaintiff's argument, already rejected multiple times by the Utah state courts, that his rights were somehow violated when SSA Healy was seated on the jury that convicted him.

This Court lacks jurisdiction to entertain plaintiff's claims - to the extent they seek declaratory relief - because plaintiff may seek review of any federal claims he wishes to assert regarding his 1996 state trial and conviction by filing a writ of habeas corpus in the proper venue, in the United States District Court for the District of Utah.  See 28 U.S.C. § 2254.  In order for this Court to order the Director to provide the relief requested (contacting Utah state authorities), the Court would necessarily first have to conclude that plaintiff's 1996 conviction was somehow invalid.  Such a ruling would essentially amount to a declaratory judgment on the validity of plaintiff's state court conviction.  As stated previously, plaintiff has already filed a pending application for habeas corpus relief in Utah.  See Ex. A.

This Circuit has long held that a party who can obtain relief through habeas corpus may not instead seek declaratory relief.  Rooney v. Department of the Army, 405 F.3d 1029, 1031 (D.C. Cir. 2005)(serviceman who could challenge Army's revocation of discharge through habeas could not seek declaratory relief regarding the discharge), citing Lobue v. Christopher, 82 F.3d 1081, 1082 (D.C. Cir. 1996) (individuals who could challenge constitutionality of extradition statute through habeas barred from seeking declaratory and injunctive relief).  This is due to the incongruity of "having attacks upon the regularity of trials made before another judge."  Lobue,

16

82 F.3d at 1082. Here, plaintiff has already exerted the option to seek relief for any federal claims stemming from his 1996 state court conviction by filing for habeas corpus. His decision strongly suggests that he understand that this is the proper forum for his complaint.[5]

Because plaintiff is incarcerated in Utah, and not in the District of Columbia, this Court also lacks jurisdiction over any attempt by plaintiff to seek habeas relief. A district court has jurisdiction over a habeas petition "only if it has jurisdiction over" the petitioner's custodian. Rooney, 405 F.3d at 1032, quoting Rumsfeld v. Padilla, 124 S. Ct. 2711, 2722 (2004). The habeas statute itself makes it clear that federal district courts may only grant habeas relief "within their respective jurisdictions." 28 U.S.C. § 2241(a). Since plaintiff is incarcerated in Utah, the Central District of Utah is therefore the only appropriate forum for in which plaintiff may seek habeas relief.

## H.   The Court Should Notify Plaintiff That Dismissal Constitutes A "Strike" Pursuant To 28 U.S.C. § 1915(g)

The Prison Litigation Reform Act of 1996, Pub. L. No. 104-134 (the "PLRA"), was enacted in part to reduce the number of frivolous lawsuits brought by prisoners in federal court. One provision of the PLRA amended the IFP statute, 28 U.S.C. § 1915, to deny IFP status to inmates who abuse the judicial process by filing three or more frivolous actions while incarcerated, unless the prisoner is in imminent danger of serious physical harm. Section 1915(e)

---

[5] It is also irrelevant whether or not plaintiff explicitly seeks release from custody for the habeas bar to declaratory relief to apply (and this plaintiff does in fact seek release from custody - or at least an order requiring FBI Director Mueller "to make a formal request of the Utah State Board of Pardons to release plaintiff on parole pending post conviction proceedings"). The Court of Appeals in Lobue noted that it had rejected "such efforts to manipulate the preclusive effect of habeas jurisdiction." Id. at 1083.

provides:

> In no event shall a prisoner bring a civil action or appeal a judgment in a civil action or proceeding under this section if the prisoner has, on 3 or more prior occasions, while incarcerated or detained in any facility, brought an action or appeal in a court of the United States that was dismissed on the grounds that it is frivolous, malicious, or fails to state a claim upon which relief can be granted, unless the prisoner is under imminent danger of serious physical injury.

As explained *supra*, plaintiff's complaint is frivolous and also fails to state a claim for which relief can be granted.  Accordingly, in its order of dismissal, the Court should note that the dismissal of the complaint constitutes a "strike" under 28 U.S.C. § 1915(e).  Such action may deter the plaintiff from continuing to assert claims in federal court that properly belong, if at all, in either state court or the federal district court in Utah.

I.    **Plaintiff Failed to State a Claim Under the Fifth, Sixth or Fourteenth Amendment**

Plaintiff appears to allege that defendants violated his Fifth, Sixth and Fourteenth Amendment rights to a fair and impartial trial by allegedly "manipulating the jury" and allowing the addition of defendant Healy as a member of the jury panel in his state criminal prosecution. See Compl. at 4 and Ex. A at 3.  Plaintiff alleges that this action also violated U.C.A. 1953 § 78-46-12, et seq.  Id.; see also Ex. E (copy of U.C.A. 1953 § 78-46-12, et seq.)  These allegations, however, are not laid out clearly in his current complaint filed in the District of Columbia.  In his current complaint, plaintiff appears more concerned that he has not been given access to official FBI OPR records.

"The Sixth Amendment right to jury trial 'guarantees to the criminally accused a fair trial

18

by a panel of impartial, "indifferent" jurors[6] ...."  United States v. Edmond, 52 F.3d 1080, 1094

(D.C. Cir. 1995) (quoting Irvin v. Dowd, 366 U.S. 717, 722 (1961)); U.S. v. Orenuga, 430 F.3d

1158 (D.D.C. 2005).  This guarantee includes the right to be tried by jurors who are capable of

putting aside their personal impressions and opinions and rendering a verdict based solely on the

evidence presented in court. See id.  Voir dire is a vehicle for ensuring this right, see

Rosales-Lopez v. United States, 451 U.S. 182, 188 (1981), as it serves to screen out jurors whose

personal views make them incapable of performing this function.  See Edmond, 52 F.3d at 1094.

As stated in plaintiff's numerous petitions for relief, plaintiff was represented by counsel at the

time of his trial.  Plaintiff's attorney apparently choose not to ask defendant Healy any questions

on voir dire and failed to exercise a peremptory challenge to remove him from the jury.  Plaintiff

failed to raise a claim of actual bias during his trial and thus, the court should apply plain error

analysis to his claim.  United States v. Brown, 26 F.3d 1124, 1126 (citing United States v. Uribe,

890 F.2d 554, 560 n. 4 (1st Cir. 1989); United States v. Bradshaw, 935 F.2d 295, 300 (D.C. Cir.

1991).  At no point did plaintiff allege, must less establish, actual bias at his trial.  Additionally,

plaintiff's conviction has been upheld numerous time on plaintiff's repeated petitions for relief.

Despite the muddled factual allegations, plaintiff has failed to provide any facts that

would indicate that the state court judge's inclusion of defendant Healy in plaintiff's state

criminal proceeding violated any constitutional rights of the plaintiff.  Therefore, plaintiff has

failed to state a claim and cannot recover on his allegation that his constitutional rights were

violated by the defendants in this case.  Moreover, as plaintiff has already litigated this issue

---

[6] Gideon made the Sixth Amendment applicable to the states by incorporation into the
Fourteenth Amendment.  Gideon v. Wainwright, 372 U.S. 335 (1963).

before the state courts in Utah, he is likely barred from re-litigating these issues here by res judicata and/or collateral estoppel.  See Federated Dep't Stores, Inc. v. Moitie, 452 U.S. 394, 398 (1981) (Res judicata provides that a final judgment on the merits of an action precludes the parties from re-litigating issues that were or could have been raised in that action).  The doctrine relieves the parties of the cost and vexation of re-litigating an identical issue with the same party, conserves judicial resources, and encourages reliance on adjudication.  See Allen v. McCurry, 449 U.S. 90, 94 (1980).  To determine whether res judicata applies, a court must examine three factors: (1) whether the parties are legally identical; (2) whether the transactions or events underlying the claims are substantially related; and (3) whether the nonmoving party had a full and fair opportunity to litigate the claim.  Nevada v. United States, 463 U.S. 110, 130 (1983).  Plaintiff has had full opportunity, as shown by his five attempts at relief and current habeas action, to litigate this issue in the Utah state and federal courts.

**J.    Case Should be Transferred to Utah Pursuant to 28 U.S.C. § 1404(a)**

The transfer of action from one federal district court to another is expressly authorized by 28 U.S.C. § 1404(a).  Plaintiff's case is an individual claim that involves factual issues arising in Utah and is more appropriately brought in the United States District Court for the Central District of Utah where the operative events giving rise to plaintiff's claims occurred.  28 U.S.C. § 1404(a) provides:

> For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it may have been brought.

As a general matter, the burden is on the party seeking transfer to demonstrate that the "balance of convenience of the parties and witnesses and the interest of justice are in [its] favor."  Armco

20

Steel Co. v. CSX Corporation, 790 F. Supp. 311, 323 (D.D.C. 1991), quoting Consolidated Metal Products, Inc. v. American Petroleum Institute, 569 F. Supp. 773, 774 (D.D.C. 1983).  The moving party "bear[s] a heavy burden of establishing that plaintiffs' choice of forum is inappropriate."  Pain v. United Tech. Corp., 637 F.2d 775, 784 (D.C. Cir. 1980).  Although the plaintiff's choice of forum is given substantial deference, this deference is "greatly diminished when the activities have little, if any, connection with the chosen forum."  Armco Steel Co. v. CSX Corp., 790 F. Supp. 311, 323 (D.D.C. 1991); Greater Yellowstone Coalition v. Bosworth, 180 F. Supp. 2d 124, 128 (D.D.C. 2001).  A court has broad discretion to determine where the proper balance lies and whether a case should be transferred.  Rhee Bros. Inc. v. Seoul Shik Poom, Inc., 869 F. Supp. 31, 33-34 (D.D.C.1994).

Courts consider several factors in determining whether a case should be transferred under section 1404(a), including private and public interests.  The private interest considerations include: (1) the plaintiffs' choice of forum, unless the balance of convenience is strongly in favor of the defendants; (2) the defendants' choice of forum; (3) whether the claim arose elsewhere; (4) the convenience of the parties; (5) the convenience of the witnesses ⋯, but only to the extent that the witnesses may actually be unavailable for trial in one of the fora; and (6) the ease of access to sources of proof.

The public interest considerations include: (1) the transferee's familiarity with the governing laws; (2) the relative congestion of the calendars of the potential transferee and transferor courts; and (3) the local interest in deciding local controversies at home.  Shapiro, 24 F. Supp. 2d at 71 (citing Trout Unlimited v. Dep't of Agric., 944 F. Supp. 13, 16 (D.D.C. 1996)).  Other considerations include the availability of compulsory process to compel attendance of

unwilling witnesses and the amount of expense for willing witnesses.  See Initiative and

Referendum Institute v. United States Postal Service, 154 F. Supp. 2d 10, 14 (D.D.C. 2001);

Chung v. Chrysler Corp., 903 F. Supp. 160, 163-164 (D.D.C. 1995); Armco Steel Co., 790 F.

Supp. at 323.

Although courts must balance these various factors to determine which forum is most

appropriate, a threshold question under section 1404(a) is whether the action could have been

brought in the transferee forum.  Van Dusen v. Barrack, 376 U.S. 612, 622 (1964); Trout

Unlimited, 944 F. Supp. at 16.  Venue could lie in Utah for this action, as plaintiff's claims arise

out of the alleged improper placement of defendant Healy as a juror in plaintiff's state criminal

case.  Indeed, as stated previously in this motion, plaintiff has a concurrent habeas action pending

in the federal district court in Utah at this time, involving the same nucleus of facts and most of

the same parties.

Plaintiff is presently incarcerated in state prison and is seeking, among other things, his

immediate release from prison.  This lawsuit is a collateral attack on his state court judgment of

conviction.  The U.S. Court of Appeals for the District of Columbia has held that cases such as

this one should not be heard in the District of Columbia, but should instead be transferred to the

judicial district where the prisoner is incarcerated, pursuant to § 1404(a).  ". . . [M]any, if indeed

not most, petitions filed by prisoners not confined in the District of Columbia and not sentenced

here originally, will tend to involve factors that make transfer to the place of incarceration

appropriate."  Starnes v. McGuire, 512 F.2d 918, 926 (D.C. Cir. 1974) (en banc).  The Court of

Appeals recognized that even if venue is technically appropriate, "there is certainly no reason

why all cases involving construction or constitutionality of a federal statute should be litigated in

the District of Columbia." Id. at 925.  Rather, where records, witnesses, and counsel for the case

are located near the prison and there is no issue of national importance raised by the complaint,

"transfer of the complaint to the district of the plaintiff's incarceration is indicated." Id. at 933;

see also Lincoln v. Bureau of Prisons, Civ. No. 96-2325, at 2 (D.D.C. May 2, 1997) ("[t]his

Circuit discourages 'carpetbagging' by prisoners who incarcerated elsewhere.").

        The D.C. Circuit in Starnes set out factors for a district court to use in deciding whether

to transfer a civil case brought by a prisoner incarcerated outside the District of Columbia.  Those

factors are: (1) the prisoner's difficulty of communication with counsel; (2) difficulty of

transferring the prisoner; (3) availability of witnesses and files; (4) speed of final resolution; and

(5) whether the case involves issues of national policy that require the testimony of high-level

administrators located in Washington, D.C.  Starnes, 512 F.2d at 929-33.

        In this case, the private and public factors, as well as the factors listed in Starnes, strongly

support the appropriateness of transfer to the Central District of Utah.  This is a *pro se* case and

the majority of witnesses and records that would be involved in litigating plaintiff's claims are all

in Utah.  There is no national policy challenge.  Defendant FBI Director Mueller, one of two

named defendants, had no personal involvement in this case and is not personally liable for

constitutional torts of employees he supervises under the doctrine of *respondeat superior*, leaving

only one defendant with any ties to Washington, D.C. - and those ties being the result of a job

promotion subsequent to any incident involving the plaintiff.  Adding to this, plaintiff has failed

to personally serve either defendant.  Based on the above-stated reasons, defendants urge that

dismissal, rather than transfer, is more appropriate.  Compare Simpkins v. District of Columbia,

108 F.3d 366 (D.C. Cir. 1997) (appropriate to dismiss in substantial Bivens actions rather than

23

transfer).

## **CONCLUSION**

_____For all of the foregoing reasons, this action should be dismissed.  If it is not dismissed, it

should be transferred to the Central District of Utah pursuant to 28 U.S.C. §1404(a).

Respectfully submitted,

____/s/_____
KENNETH L. WAINSTEIN, D.C. BAR # 451058
United States Attorney


_____/s/_____
RUDOLPH CONTRERAS, D.C. BAR # 434122
Assistant United States Attorney

____/s/_____
JOHN F. HENAULT, D.C. Bar # 472590
Assistant United States Attorney
Judiciary Center Building
555 4th Street, N.W. – Civil Division
Washington, D.C.  20530
(202) 307-1249; (202) 514-8780 (facsimile)

24

## <u>CERTIFICATE OF SERVICE</u>

**I HEREBY CERTIFY** that on the 21st day of April, 2006, I caused service of the foregoing to be made on the *pro se* plaintiff:

Michael Paolone
# 25408-89213
CENTRAL UTAH CORRECTIONAL FACILITY
P. O. Box 550
Gunnison, UT 84634-0550


___/s/_____
JOHN F. HENAULT, D.C. Bar # 472590
Assistant United States Attorney