UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| MICHAEL L. PAOLONE,<br>        Plaintiff,<br><br>v.<br><br>ROBERT MUELLER, et al,<br>        Defendants | )<br>)<br>)    CIVIL ACTION NO. 05-2300 (JDB)<br>)<br>)<br>)<br>)<br>) |

## PLAINTIFFS RESPONSE TO DEFENDANTS MOTION TO DISMISS ACTION

Plaintiff, Michael L. Paolone appearing through counsel pro se respectfully responds to defendants motion to dismiss and asks this court to DENY defendants motion based upon the argument contained herein.

**RECEIVED**

MAY - 4 2006

NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

III. (A)  Perfection of Service

Defendants argue that service has not been effected as to the individual capacity of defendant Mueller and Healy, citing provisions of Federal Rule of Civil Procedure 4(i)(i) and (2). Specifically, that plaintiff must effect service by delivering a copy of the complaint to presumably the defendants "dwelling house, or place of abode". This argument is not novel for defendants, nor has the circumstances changed for the plaintiff. Quite simply, the FBI still maintains that all service is to be effected at FBI Headquarters and the FBI still will not release private addresses to plaintiff, more importantly service for IFP incarcerated plaintiffs is exclusively controlled, managed and effected by the clerk of court through the United States Marshall's Service.
Defendants however miss the relevant section of rule (4)(i)(2)(B) which states in part;
 (B)
 — is effected by serving the United States in the manner prescribed by Rule (4)(i)(1) and by serving the officer or employee in the manner prescribed by Rule 4(e), (f) or (G)"

Rule 4(e)(2) ; (in part)
 " or by delivering a copy of the summons and of the complaint to an agent authorized by appointment or by law to recieve service of process"

Both defendants have both been served at their duty stations, those duty stations accepted service on behalf of defendants, service has been effected in both official and individual capacities.

III.  Respondeat Superior

Defendants presume plaintiffs claims against defendant Mueller are based upon the doctrine of respondeat superior, plaintiff asks the court to refer to the complaint, the four corners of the complaint and asks no more.

26. As to defendants 1 and 2, these defendants, the first, responsible for Agents training and supervision, had been advised by the OPR investigation that plaintiffs clearly established and clearly defined constitutional protections, namely due process protections and right

to fair and impartial trial, had been breeched by one of its agents. The defendant was aware that decisional law supported the existence of these rights, as well as under pre-existing law, the defendant understood the acts were unlawful.

Plaintiff does not pursue liability for actions of an employee of which he supervises, he pursues liability for defendants own actions and his own involvement in the obfuscation of the facts determined by the investigation. Defendant authorized the OPR investigation, he then reviewed the results, he made the choice to withold the information from plaintiff and plaintiff's council of purposeful violations of plaintiffs constitutional and civil rights and breech of federal criminal statutes. The casual connection and affirmative link between the misconduct complained of and the official sued is present and liability attaches for damages.
Defendants actions and personal involvement substantially differs from defendant Healy, nor does plaintiff hold defendant Mueller accountable for defendant Healy's actions. No claim of respondeat superior exists within the complaint, the defendants seem to raise the claim on their own accord.

III. (D) Qualified Immunity

Defendants argue that they are entitled to qualified immunity from damages, defendants argument seems misplaced at best. In Harlow v Fitzgerald, the court held that government officials performing discretionary functions are sheilded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known see: Procunier v Navarette, 434 US 555, 55 Led 2d 24, 98 Sct 855 (1978); Wood v Strickland, 420 US at 322, 43 Led 2d 214, 95 Sct 992.

Reliance on the objective reasonableness of an officials conduct, as measured by reference to clearly established law should avoid excessive disruption of government and permit the resolution of many insubstantial claims on summary judgement. On summary judgement, the judge appropriately may determine, not only the currently applicable law, but whether that law was clearly established at the time the action occurred. If the law at that time was not clearly established an official could not be reasonably expected to anticipate subsequent legal developments, nor could he fairly be said to "know" that the law forbade conduct not previously identified as unlawful. Until this threshold immunity question is resolved, discovery should not be allowed. If the law was clearly established the immunity defense ordinarily should fail, since a reasonably competent public official should know the law governing his conduct. Id 457 US 800, 73 Led 2d at 411., 102 Sct 2727.

By defining the limits of qualified immunity essentially in objective terms, the court provided no license to lawless conduct. The public interest in deterrence of unlawful conduct and in compensation of victims remains protected by a test that focuses on the objective legal reasonableness of an officials acts. Where an official could be expected to know that certain conduct would violate statutory or constitutional rights, he should be made to hesitate; and a person who suffers injury caused by such conduct may have a cause of action.

The framework for analyzing claims of qualified immunity on summary judgement is well settled. Once a defendant pleads qualified immunity, the plaintiff bears the burden of (1) coming forward with sufficient facts to show that the defendants actions

violated a federal constitutional or statutory right and (2) demonstrating that the right violated was clearly established at the time of the conduct at issue. In order to carry this burden the plaintiff must do more than identify in the abstract a clearly established right and allege that the defendant violated it. Rather, the plaintiff must articulate the clearly established constitutional right and the defendants conduct which violated it with specificity.

For a right to be clearly established, the contours of the right must be sufficiently clear that a reasonable official would understand that what he was doing violated that right. Anderson v Creighton, 483 US 635, 640, 107 Sct 3034, 97 Led 2d 523 (1987) Plaintiff is not required to show that the very conduct in question has previously been held unlawful See: Anderson, 483 US at 640, 107 Sct 3034. He is however, required to demonstrate the unlawfulness was apparent in light of established law. see: Anderson, 483 US at 640, 107 Sct 3034. Generally this requires that the plaintiff demonstrate a substantial correspondence between the conduct in question and prior law alleg edly establishing that the defendants actions were clearly prohibited.

In Saucier v Katz, 533 US 194, 201-202 (2001) the court continued this framework,

" in suits against police officers qualified immunity decisions should be made as early as possible and courts should not conflate two independent inquiries (1), whether the facts alleged show a violation of constitutional rights ; and (2) whether the constitutional right was clearly established so that it would be clear to a reasonable officer that his or her conduct was unlawful in a particular situation. Id

Plaintiffs allegations submit that Defendant Mueller, became aware of the facts contained within the internal FBI investigation of which revealed that Agent Healy participated in the circumvention of jury selection procedures in plaintiffs trial proceeding. Plaintiff submits that defendant Mueller intentionally obfuscated those facts of which breech the United States Constitution, Article VI protections to fair and impartial jury, Article V and XIV due process protections.

Plaintiffs allegations submit that Defendant Healy, actually participated in the circumvention of jury selection procedures

and actually sat as a juror and jury foreman in the trial itself, an admission directly from the defendant himself. This action would breech the United States Constitution, Article VI protections to fair and impartial jury, Article V and XIV due process protections.

This action and violation was apparant in light of established law and constitutional rights, these are valid constitutional rights, not something new, nor are these overage officials, they are experienced and well seasoned federal law enforcement officials. They are themselves charged with protecting citizens constitutional rights and enforcing the laws of the United States. Defendants cannot show this court that plaintiff was not entitled to the enjoyment of these Constitutional protections ; Trulock v Freeh, 275 F.3d 391, 406 (4th Cir. 2001) ("FBI agents not entitled to qualified immunity for retaliating against individual for publishing article unless they could show why the article would not enjoy first amendment protections").
The reasonableness standard is determined by settled law in the circumstances ; Long v Norris, 929 F.2d 456, 461 (8th Cir, 1991) ("public officials cannot rely on ignorance of even most esoteric aspects of law to avoid liability"). Defendants request this court to agree that no constitutional right would have been violated, that the Articles in the constitution simply dont exist, we as citizens have no right to fair and impartial jury trial and due process. Plaintiff somehow will believe that this court is not ready to submit to the United States that this protection has been withdrew from the constitution per the u.s. attorneys request.
The fact is that these actions would violate the constitution and relief would be available, a jury should answer these questions and determine the extent of relief.

III. (E) Heck v Humphrey ; (G) Contacting Utah Authorities and
(J) Transfer

These defenses are closely related, in sum the defendants claim that
the current BIVENS action is barred since it is meant to imply that the
underlying criminal conviction is invalid. That contacting the Utah
state officials would be barred for the same reasons; the plaintiff
aside from monatary damages, requests injunctive relief in the form
of "Formal Request of the Utah Board of Pardons to release plaintiff on
parole pending post conviction proceedings"

Plaintiff does not contend in the complaint that defendants actions
have unconstitutionally confined him only that defendants unlawfully
interfered with the exercise of constitutional protections during the
plaintiffs criminal trial, and, that defendants have unlawfully
assisted in the obfuscation and concealment of the violation of
plaintiffs constitutional protections. Defendants point out in several
avenues and variations, that plaintiff attacks the validity of the
actual sentence, only because defendants believe that plaintiffs
victory on the claims will lead to a speedier release from prison.
Consequently, defendants argue, that plaintiffs lawsuit, in effect,
collaterally attack the duration of his confinement, hence, such a
claim may only be brought through a habeas corpus action, not through
a BIVENS or §1983 action.

The problem in defendants argument lies in its jump from a true
premise, that in all Liklihood the plaintiffs hope these actions will help
bring about earlier release) to a faulty conclusion (that habeas is his
sole avenue for relief). The connection between the lawfullness of the
defendants actions and plaintiffs release from confinement is to tenuous
here to achieve defendants door closing objective. Unfortunately, defendants
again misstate the state of the law in reference to Heck and barring
plaintiffs suit.

The United States Supreme Court initially addressed the relationship
between §1983 and the federal habeas statutes in Preiser v Rodriguez,
411 U.S. 475, 489, 93 Sct 1827, 36 L ed 2d 439 (1973), in that case state
prisoners brought civil rights actions attacking the constitutionality of
prison disciplinary proceedings that had led to the deprivation of their
good time credits, Id at 476, 93 Sct 1827. The court conceded that the
language of §1983 literally covers their claims. See §1983 (authorizing
claims alleging the deprivation of constitutional rights against every
"person" acting "under color of "state Law)

But, the Court noted, the language of the federal habeas statutes applies as well. See 28 U.S.C. §2254(e) (permitting claims by a person being held "in custody in violation of the constitution"). Moreover, the court observed the language of the habeas statute is more specific, and the writs history makes clear that it traditionally "has been accepted as the specific instrument to obtain release from [unlawful] confinement" Preiser, 411 US, at 486, 93 S.ct 1827. Finally, habeas corpus actions require a petitioner fully to exhaust state remedies, which §1983 does not. Id. at 490-491, 93 S.ct 1827; see Patsy v Board, of Regents of Fla, 457 US 496, 507, 102 Sct 2557, 73 Led 2d 172 (1982). These considerations of linguistic specificity, history and comity led the court to find an implicit exception to §1983's otherwise broad scope for actions that lie "within the core of habeas corpus" Preiser, 411 US at 487, 93 Sct 1827.

Defining the scope of that exception, the court concluded that a §1983 action will not lie when a state prisoner challenges "the fact or duration of his confinement", id, at 489, 93 Sct 1827, and seeks either "immediate release from prison" or the "shortening" of his term of confinement. id at 482, 93 Sct 1827. Because an action for restoration of good time credits in effect demands immediate release or a shorter period of detention, it attacks "the very duration of .... physical confinement," id at 487 -488, 93 Sct 1827, and thus lies at the core of habeas corpus" id at 487, 93 Sct 1827. Therefore the court held, the Preiser prisoners could not pursue their claims under §1983.

In Wolff v McDonnell, 418 US 539, 554, 94 Sct 2963, 41 Led 2d 935 (1974) the court elaborated the contours of the habeas corpus "core". As in Preiser, state prisoners brought a §1983 action challenging prison officials revocation of good time credits by means of constitutionally deficient disciplinary proceedings, 418 US at 553, 94 Sct 2963. The court held that the prisoners could not use §1983 to obtain restoration of the credits because Preiser had held that "an injunction restoring good time improperly taken is foreclosed". 418 US, at 555, 94 Sct 2963. But the inmates could use §1983 to obtain a declaration ("as a predicate to "their requested damages award") that the disciplinary procedures were invalid. Ibid.

They could also seek "by way of ancillary relief an otherwise proper injunction enjoining the prospective enforcement of invalid prison regulations" Ibid. In neither case would victory for the prisoners necessarily have meant immediate release or a shorter period of incarceration; the prisoners attacked only the "wrong procedures not the wrong result (i.e., [the denial of good time credits" Heck, supra

483, 114 Sct 2364 (discussing Wolff)

In Heck, the court considered a different but related circumstance. A state prisoner brought a 1983 action for damages, challenging the conduct of state officials who, the prisoner claimed, had unconstitutionally caused his conviction by improperly investigating his crime and destroying evidence, 512 US, at 479, 114 Sct 2364. The court pointed to "the hoary principle that civil tort actions are not appropriate vehicles for challenging the validity of outstanding criminal judgements" Id, at 486, 114 Sct 2364. And it held that where "establishing the basis for the damages claim necessarily demonstrates the invalidity of the conviction" id, at 481-482, 114 Sct 2364, a §1983 action will not lie "unless the conviction or sentence has already been invalidated", id, at 487, 114 Sct 2364. The court then added that, where the §1983 action "even if successful), will not demonstrate the invalidity of any outstanding criminal judgement the action should be allowed to proceed. Ibid.

Finally, in Edwards v Balisok, 520 US 641, 648, 117 Sct 1584, 137 L ed 2d 906 (1997) the court returned to the prison disciplinary procedure context of the kind it had addressed previousely in Preiser and Wolff. Balisok, sought "a declaration that the procedures employed by state officials to deprive him of good time credits violated due process, damages for use of the unconstitutional procedures, and an injunction to prevent future violation" 520 US, at 643, 117 Sct 1584. Applying, Heck, the court found that habeas was the sole vehicle for the inmates constitutional challenge insofar as the prisoner sought declatory relief and money damages, because the "priciple procedural defect complained of", namely deciet and bias on the part of the decisionmaker, "would if established, necessarily imply the invalidity of the depreavation of Balisoks good time credits" 520 US, at 646, 117 Sct 1584. (Hence, sucess on the prisoners claim for declatory relief and money damages would necessarily imply the invalidity of the punishment imposed" Id, at 648, 117 Sct 1584. Nonetheless, the prisoners claim for an injunction barring future unconstitutional procedures did not fall within habeas exclusive domain. That is because "ordinarily, a prayer for such prospective relief will not necessarily imply, the invalidity of a previous loss of good time credits" Ibid.

Throughout the legal journey from Preiser to Balisok, the court has focused on the need to insure that state prisoners use only habeas corpus (or similar state) remedies when they seek to invalidate the duration of their confinement — either directly through an injunction or judicial determination that necessarily implies the unlawfulness of the states custody. Thus, Preiser, found an implied exception to §1983's coverage when the claim seeks — not where it simply "relates to"— "core" habeas corpus relief, i.e., where a state prisoner requests present or future release. Cf. post at 1254 (KENNEDY, J. dissenting)( arguing that Preiser covers challenges that "Relate to the duration of confinement, Wilkerson v Dotson, 125 S ct 1242, 161 Led 2d 253 (2005).

Wolff, makes clear that §1983 remains available for procedural challenges where success in the action would not necessarily spell immediate or speedier release for the prisoner. Heck, specifies that a prisoner cannot use §1983 to obtain damages where success would necessarily imply the unlawfulness of a (not previously invalidated) conviction or sentence. And Balisok, like Wolff, demonstrates that habeas remedies do not displace §1983 actions where success in the civil rights suit would not necessarily vitate the legality of (not previously invalidated) state confinement. These cases taken together indicate that a state prisoners §1983 action is barred (absent prior invalidation) — no matter the relief sought (damages or equitable relief), no matter the target of the prisoners suit (state conduct leading to conviction or internal prison proceedings) — if success in that action would necessarily demonstrate the invalidity of confinement or its duration.

Plaintiff, challenges the procedures utilized by defendants obfuscating the facts of the internal investigation by not disclosing its findings and utilizing policy to effect this obfuscation. As well as defendants participation in the improper jury selection proceedures of which has crossed constitutional and civil boundries as well is in conflict with United States Law 18 U.S.C. §241-242. Plaintiff seeks not to prosecute under those statutes, this is not plaintiffs province, only to indicate, along with the constitutions provisions, the violation of clearly established Law by defendants.

Victory in the present suit, according to the relief requested would at best cause the Utah Board of Pardons to only consider granting the plaintiff parole pending post conviction action, continuation of custody. Utah parole authorities may in their discretion, decline

to do so, well within the boards discretionary powers. The notification to the Utah Attorney General does no more than notifies of a possible problem, the standards of review of claims presented even to a court in post conviction review vary, from Harmless error doctrines to the procedural defenses the state could present, none of these possibilitys present a situation where immediate release would occur nor the shortening of the duration of the sentence.

Defendants submit the following:

"Here, like plaintiff in williams, plaintiffs complaint is that he remains in prison as the result of an allegedly improper conviction. His claims against the Director and unnamed agents of the OPR are complaints that they have conspired to fail to notify the state of utah of this allegedly improper conviction. All of plaintiffs claims therefore necessarily imply the invalidity of his 1996 state court conviction, a conviction that has withstood several rounds of appellate review by the Utah Courts."

Plaintiff complaints contain no such words nor contention, nor would be the complaints be at issue, the relief requested would be the focus as to the ultimate result of a victory of the suit. Plaintiff wishes to make very clear that at no point in any filing has he submitted to this court that the conviction is improper, nor that the defendants caused such. The actual basis of the claims are defined in the counts in the complaint, and nothing remotely near defendants proffers exist.

Moreover, the conviction itself has never in 10 years seen a direct review, it has been blocked time after time by the state court judge involved in this criminal case. Only now, 10 years later is the actual criminal case being argued on direct appeal in case no. 2005-1142 in the Utah Court of Appeals. This has been the historical problem with this entire 10 year mess, obfuscation and twisting the truth, in the perverted belief that justice is a battle to defeat the prisoners litigation at all costs instead of simply seek truth. Plaintiff requests this court allow this matter to come to task in the presence of a jury.

III. (F) Statute of limitations

Defendants submit that the statute of limitations accrued from 1996, under federal law the statute of limitations is decisional on when the claims accrue from Indus. Constructors Corp v United states Bureau of Reclamation, 15 F.3d 963, 969 (10th Cir. 1994)

It simply defy's logic and reality how defendants could believe that facts discovered in 2003 during an <u>internal</u> FBI probe, maintained in protected internal files, and only released in a December 2004 letter to plaintiffs and subsequent 2005-06 disclosure of internal reports. Could begin to accrue in 1996, and would be now time barred, it simply staggers the mind to concieve that this argument is coming from anyone representing the United States of America. Plaintiff asks the defendants at minimum uphold the integrity of the truth and honor the Deputy Assistant Director Robert Garittys decision of not allowing this information to remain hidden.

## III.(H)  Strike Pursuant To 28 U.S.C. §1915 (g)

Defendants contend that the previous review by this court in the determination of IFP status is erroneous, that the complaint is frivolous, it is not. The complaint is jurisdictionally proper and is not a §1983 action subject to PLRA provisions beyond IFP determination. The complaint does not request relief from defendants of who are immune from suit, the complaint maintains jurisdiction pursuant to a federal question. The defendants are contained within this federal circuit, most of the actions occurred within this federal district, and would be a convienient forum for defendants and this court.


## CONCLUSIONS

Defendants have bombarded this court with frankly everything but the kitchen sink, they have worked diligently to overcome this one unskilled, untrained pro se plaintiff again the government rises to not only defeat at all costs the plaintiffs claims, but moreover to defeat the truth. From attempts to pursuade this court that constitutional protections suddenly disappeared from existence, such as the rights to fair and impartial trial and due process. To illusions that claims discovered in 2003 and finally disclosed in 2005, were known in 1996. In sum, plaintiff states claims that relief can be granted, this court effected proper service and this court does not lack subject matter jurisdiction, this matter is not required to seek relief under federal habeas statutes. For the aforementioned reasons plaintiff respectfully requests this matter be scheduled for trial and the defendants motion to dismiss be denied, at no time have defendants denied the actions occurred as plaintiff claims.

Respectfully submitted this 27ᵀʰ day of April 2006

_____

ATTORNEY FOR THE PLAINTIFF

MICHAEL L. PAOLONE 25408-89213

CENTRAL UTAH CORRECTIONAL FACILITY

P.O. BOX 550 LEGAL MAIL

GUNNISON, UTAH 84634

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY THAT A TRUE AND CORRECT COPY OF THE FOLLOWING HAS BEEN SENT TO THE FOLLOWING POSTAGE PRE-PAID:

John F. Henault
Asst United States Attorney
555 4th Street, N.W. - Civil Division
Washington, D.C.  20530

THIS 27th Day of April 2006

_____

ATTORNEY FOR THE PLAINTIFF